

# IN THE
## TENTH COURT OF APPEALS

### No. 10-22-00048-CR

**VINCENT EUSEBIO BRICENO,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 278th District Court**
**Leon County, Texas**
**Trial Court No. 21-0101CR**

## OPINION

Appellant, Vincent Eusebio Briceno, was found guilty of the offense of possessing a cellular telephone in a correctional facility, a third-degree felony. *See* TEX. PENAL CODE ANN. § 38.11(j). The jury found that Briceno had previously been convicted twice of burglary of a habitation and assessed his punishment at twenty-five years in prison. *See id.* § 12.42(d).

In four issues, appellant argues that: (1) the trial court failed to properly instruct the jury regarding the applicable culpable mental states in the guilt-innocence charge; (2) the trial court erroneously included enhancement allegations in the punishment charge, which resulted in appellant being sentenced as a habitual offender under section 12.45(d) of the Texas Penal Code; (3) because the charge erroneously included enhancement allegations, the twenty-five-year sentence was illegal; and (4) the trial court assessed unauthorized court costs. We affirm as modified.

**The Jury Charge**

In his first issue, Briceno contends that the trial court failed to properly instruct the jury regarding the applicable culpable mental states in the guilt-innocence charge. Assuming, without deciding, the jury charge contains error, we cannot conclude that Briceno was egregiously harmed.

STANDARD OF REVIEW

In reviewing a jury-charge issue, an appellate court's first duty is to determine whether the charge contains error. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). If the jury charge contains error, the appellate court must analyze that error for harm. *Middleton v. State*, 125 S.W.3d 450, 453-54 (Tex. Crim. App. 2003). The court will reverse if an error was properly preserved by objection and is not harmless. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Conversely, where a party does not properly preserve error by proper objection, the court will only reverse for egregious

harm, meaning Briceno did not receive a fair and impartial trial. *Id.* To obtain a reversal for jury-charge error, Briceno must have suffered actual harm and not merely theoretical harm. *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012); *Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986).

Briceno did not object to the jury charge in the trial court; thus, we examine the record for egregious harm. *See Almanza*, 686 S.W.2d at 171. In examining the record for egregious harm, we consider the jury charge, the state of the evidence, the final arguments of the parties, and any other relevant information revealed by the record of the trial as a whole. *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006). Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007); *Sanchez*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006).

DISCUSSION

**The Entirety of the Jury Charge**

The culpable mental states in the penal code encompass three possible conduct elements that may be involved in an offense: (1) nature of the conduct; (2) result of the conduct; and (3) circumstances surrounding the conduct. TEX. PENAL CODE ANN. § 6.03; *see McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). When an offense is delineated explicitly as to the type of conduct, the trial court should limit the statutory

definitions in the jury charge to the culpable mental state required. *Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015); *Cook v. State*, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994).

Briceno was charged by indictment with unlawful possession of a cellular telephone in a correctional facility. *See* TEX. PENAL CODE ANN. § 38.11(j). Section 38.11 of the Texas Penal Code does not expressly state a culpable mental state; thus, the culpable mental state may be alleged as either intentionally, knowingly, or recklessly. *See id.* § 6.02(b)-(c); *see, e.g., Krick v. State*, No. 02-16-00013-CR, 2016 Tex. App. LEXIS 7536, at *6 (Tex. App.—Fort Worth July 14, 2016, pet. ref'd); *but see Brown v. State*, 89 S.W.3d 630, 632-33 (Tex. Crim. App. 2002) (construing an offense under section 38.11(b) of the Texas Penal Code involving the possession of marihuana in a correctional facility to require a culpable mental state of intentional or knowing); *Ferguson v. State*, 335 S.W.3d 676, 684 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("A person commits a crime if he intentionally or knowingly possesses a cellular telephone while an inmate in a correctional facility operated by the TDCJ." (citing TEX. PENAL CODE ANN. § 38.11(j))). Here, the indictment alleged only the higher culpable mental states—that Briceno intentionally or knowingly possessed a cellular telephone in a correctional facility—than the lower culpable mental state of reckless possession of the cellular telephone in a correctional facility. Although incorrect pursuant to section 6.02(b) and (c) of the Texas Penal Code, the culpable mental states alleged in the indictment worked to Briceno's

advantage given that the State could not rely on the lower culpable mental state of reckless. Thus, the exclusion of the reckless culpable mental state cannot be said to have egregiously harmed Briceno.

In any event, Briceno's issue on appeal centers on the definitions provided in the guilt-innocence charge for intentional and knowing. Regarding the culpable mental states, the abstract portion of the charge provided the following:

> "Intentionally" A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

> "Knowingly" A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

These instructions defining the culpable mental states included language as to all the "conduct elements."[1] *See McQueen*, 781 S.W.2d at 603; *see also* TEX. PENAL CODE ANN. § 6.03(a)-(b).

Nevertheless, the application portion of the jury charge stated:

---

[1] On appeal, Briceno asserts that an offense under section 38.11(j) of the Texas Penal Code is similar to the offense of possession of drugs in which, according to Briceno, the conduct elements have been determined to be nature of conduct or circumstances surrounding the conduct. We are unable to find any case law definitively stating the conduct element(s) for an offense under section 38.11(j). However, even if Briceno is correct and the conduct elements for a section 38.11(j) offense is nature of conduct and/or circumstances surrounding the conduct, we note that the language included in the application portion of the guilt-innocence charge substantially tracked the statutory language in section 38.11(j) and, thus, limited any potential harm from the full statutory definitions of intentional and knowing in the abstract portion of the guilt-innocence charge.

You must determine whether the [S]tate has proved, beyond a reasonable doubt, two elements. The elements are that—

1. the defendant, in Leon County, Texas, on or about the 5th day of October, 2021, while confined in the Leon County Jail, a correctional facility,

2. intentionally or knowingly possessed a cellular telephone.

You must all agree on elements 1 and 2 listed above.

If you all agree the [S]tate has proved, beyond a reasonable doubt, both of the two elements listed above, you must find the defendant "guilty."

If you all agree the [S]tate has failed to prove, beyond a reasonable doubt, one or both of elements 1 and 2 listed above, you must find the defendant "not guilty."

These instructions are consistent with the statutorily prohibited conduct. *See* TEX. PENAL CODE ANN. § 38.11(j); *see also Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999) ("Where the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious."); *Martinez v. State*, 924 S.W.2d 693, 699 (Tex. Crim. App. 1996) (holding that a jury instruction that tracks statutory language "will not be deemed error on the part of a trial judge"); *Patrick v. State*, 906 S.W.2d 481, 493 (Tex. Crim. App. 1995) ("We conclude that because the facts, as applied to the law in the application paragraph, pointed the jury to the appropriate portion of the definitions, no harm resulted from the court's failure to limit the definitions of culpable mental states to proving the conduct elements of the underlying offense."); *Hughes v. State*, 897 S.W.2d 285, 296 (Tex. Crim. App. 1994) (noting that in considering the jury charge as a whole,

when the purported error involves the misstatement of the required culpable mental states, we "may consider the degree, if any, to which the culpable mental states were limited by the applications portions of the jury charge.").

Accordingly, we conclude that consideration of the entire jury charge, as applied in the factual context of this case, weighs against a finding of egregious harm.

**The State of the Evidence**

The second factor requires us to review the state of the evidence, including the contested issues and weight of probative evidence. *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015). Under this factor, "we look to the state of the evidence to determine whether the evidence made it more or less likely that the jury charge caused appellant actual harm." *Arrington v. State*, 451 S.W.3d 834, 841 (Tex. Crim. App. 2015).

Here, there is ample evidence of Briceno's guilt, which mitigates any harm that the jury charge may have caused. Sergeant Harry Van Skike of the Leon County Sheriff's Office testified that he was working at the Leon County jail when he noticed that his cellular telephone was missing after he had accidentally left the phone on the booking desk counter while he received a haircut. Sergeant Van Skike received information from another jailer that while Sergeant Van Skike was getting a haircut, Briceno "had come out and used the phone." Surveillance videos were admitted into evidence showing that Briceno had passed by the booking-desk counter where Sergeant Van Skike's phone was located, reached over the counter, and took the phone. Leon County Sheriff's Deputy

John Edward Flemmons found Sergeant Van Skike's phone "[r]ight at the—at the doorway. It—it was wedged between the door frame and, yeah, I guess the secondary frame right there where the door locks in" in the "H-Tank" where Briceno was housed. The State also presented a photo of posted sign located on the front of the booking desk stating that possession of contraband, including a cellular telephone, is a felony.

From this evidence, a reasonable factfinder could conclude beyond a reasonable doubt that Briceno committed the offense of possession of a cellular telephone in a correctional facility. *See* TEX. PENAL CODE ANN. § 38.11(j). As such, we cannot say that this factor weighs in favor of a finding of egregious harm.

**Arguments of Counsel**

Under this factor, we consider whether any statements made during the trial by the prosecutor, the defense counsel, or the trial court may have exacerbated or ameliorated the error in the jury charge. *Arrington*, 451 S.W.3d at 844. During its closing argument, the State mentioned the "knowingly" and "intentionally" culpable mental states in reference to the surveillance footage capturing Briceno reaching over the booking desk to take Sergeant Van Skike's phone. The State asserted that the surveillance footage showed that Briceno's act of taking the phone was knowing and intentional because "[n]obody stuck it in his pocket. Nobody hid it in his cell. He reaches over that counter, reaches down and takes it." Defense counsel did not contest whether Briceno's actions were knowing or intentional. In fact, defense counsel conceded as such.

Accordingly, we cannot say that the closing arguments of the parties exacerbated the purported error in the jury charge. Therefore, we conclude that this factor does not weigh in favor of a finding of egregious harm.

**Other Relevant Information in the Record**

As to the fourth factor, Briceno contends that there are no other considerations in the record that are relevant to the egregious-harm analysis. We agree. As such, this factor weighs against a finding of egregious harm.

**Summary**

Based on the foregoing, we conclude that any error in the abstract portion of the guilt-innocence charge was not calculated to injure Briceno's rights or deprive him of a fair and impartial trial. *See Almanza*, 686 S.W.2d at 171; *see also Stuhler*, 218 S.W.3d at 719; *Sanchez*, 209 S.W.3d at 121. We overrule Briceno's first issue.

**The Enhancement Allegations**

In his second issue, Briceno presents several arguments attacking both the indictment and the punishment charge as they relate to enhancement allegations made by the State. Briceno's second issue is multifarious; however, in the interest of justice, we will endeavor to address the arguments that we can discern in this issue. *See Wood v. State*, 18 S.W.3d 642, 649 n.6 (Tex. Crim. App. 2000) (refusing to address multifarious grounds); *County v. State*, 812 S.W.2d 303, 308 (Tex. Crim. App. 1989) ("Appellant presents nothing for review in this point of error because his argument is multifarious.");

*see also Fitch v. State*, No. 05-20-00423-CR, 2021 Tex. App. LEXIS 9976, at **6-7 (Tex. App.—

Dallas Dec. 16, 2021, pet. ref'd) (mem. op., not designated for publication) (concluding

that an issue was multifarious but addressing one contention in the interest of justice);

*Taylor v. State*, No. 05-95-01172-CR, 1997 Tex. App. LEXIS 4353, at **4-5 (Tex. App.—

Dallas Aug. 19, 1997, pet. ref'd) (not designated for publication) ("A point of error is

multifarious if it combines more than one contention in a single point. . . . A multifarious

point or error presents nothing for our review.").

In our review, Briceno appears to argue that: (1) the notice provided in the

indictment as to the enhancement allegations was inadequate; (2) the indictment failed to

properly allege enhancement under the habitual-felony-offender statute, *see* TEX. PENAL

CODE ANN. § 12.42(d); (3) the evidence supporting enhancement under the habitual-

felony-offender statute is insufficient; and (4) the trial court should not have instructed

the jury on the habitual-felony-offender statute because the indictment did not provide

adequate notice to Briceno. As explained below, we reject each of Briceno's arguments

in his second issue.

In his first two arguments, Briceno complains about the indictment. To preserve

error for appellate review, the complaining party must object or raise the matter in the

trial court, giving the trial court sufficient notice of the defect, error, or irregularity of the

form or substances of the indictment. *See* TEX. R. APP. P. 33.1(a)(1)(A); TEX. CODE CRIM.

PROC. ANN. art. 1.14(b); *see also Lemell v. State*, 915 S.W.2d 486, 489 (Tex. Crim. App. 1995);

*Massey v. State*, 933 S.W.2d 582, 584 (Tex. App.—Houston [1st Dist.] 1996, no pet.). Here, Briceno failed to object to the purported inadequate notice and pleading deficiency as to the habitual-felony-offender statute in the indictment at trial. Thus, Briceno failed to preserve these arguments for appellate review. *See* TEX. R. APP. P. 33.1(a)(1)(A); TEX. CODE CRIM. PROC. ANN. art. 1.14(b); *see also Lemell*, 915 S.W.2d at 489; *Massey*, 933 S.W.2d at 584.

Next, Briceno appears to argue that the evidence supporting enhancement under the habitual-felony-offender statute is insufficient. This argument contains no references to the record or an explicit allegation that the State's proof in support of enhancement under the habitual-felony-offender statute was insufficient. Accordingly, we conclude that this contention was inadequately briefed. *See* TEX. R. APP. P. 38.1(i).

And finally, Briceno appears to assert that the trial court should not have instructed the jury on the habitual-felony-offender statute because the indictment did not provide adequate notice to Briceno. This argument lacks merit because it is premised on his prior assertion that the allegations in the indictment were inadequate—an assertion that was not preserved for appellate review. Based on the foregoing, we overrule Briceno's second issue.

### The Illegal Sentence Allegation

In his third issue, Briceno complains that his twenty-five-year sentence is illegal because the indictment alleged only an enhancement allegation, not a habitual allegation.

This argument is predicated on Briceno's complaint about the indictment in his second issue. As noted earlier, we concluded that Briceno failed to preserve any complaint about the form or substance of the indictment by not objecting to the indictment in the trial court. Because this issue is predicated on Briceno's complaint about the indictment in his second issue, which was not preserved, we overrule Briceno's third issue.

## Court Costs

In his fourth issue, Briceno argues that the trial court assessed unauthorized court costs. In particular, Briceno challenges the assessment of a $5 fee for his release, a $10 fee "for taking and approving a bond," $188 in fees associated with issuance and service of documents, and $1,000 in court-appointed attorney's fees. Briceno requests that the judgment and bill of costs be modified to delete $1,203 in court costs wrongfully assessed.

STANDARD OF REVIEW

Sufficient evidence must support an assessment of costs in a bill of cost or in a judgment. *See Mayer v. State*, 309 S.W.3d 552, 554-56 (Tex. Crim. App. 2010) (holding that the factual predicate for the assessment of court costs included in a bill of costs must be supported by sufficient evidence in the record). We review the record in the light most favorable to the award in measuring the sufficiency of the evidence to support an assessment of costs. *See id.* at 557.

ASSESSMENT OF $5 RELEASE FEE

Under article 102.011 of the Texas Code of Criminal Procedure, a defendant convicted of a felony or a misdemeanor must pay certain fees for various services performed by peace officers. *See* TEX. CODE CRIM. PROC. ANN. art. 102.011. Briceno challenges the $5 fee for "commitment or release" under article 102.011(a)(6). *See id.* art. 102.011(a)(6). Briceno asserts that this $5 is not authorized because he has been confined for the duration of the case and was never released. In support of this contention, Briceno relies on an Attorney General's opinion from 2014. *See* Tex. Att'y Gen. Op. No. GA-1063, at 5-6 (2014).

We first note that Attorney General's opinions, although persuasive authority, are not binding on the courts of this state. *Holmes v. Morales*, 924 S.W.2d 920, 924 (Tex. 1996); *Cavender v. Houston Distrib. Co.*, 176 S.W.3d 71, 73 (Tex. App.—Houston [1st Dist.] 2004, pet. denied); *see also Williams v. State*, 495 S.W.3d 583, 592 n.7 (Tex. App.—Houston [1st Dist.] 2016, pet. dism'd). In addition, the judgment of conviction ordered the Leon County Sheriff "to take and deliver Defendant to the Director of the Correctional Institutions Division, TDCJ, for placement in confinement in accordance with this judgment." The judgment also ordered that Briceno be confined in the Institutional Division of the Texas Department of Criminal Justice, not the county jail. Thus, the Leon County Sheriff was required to release Briceno into the possession of the prison system. Accordingly, Briceno was properly assessed a $5 release fee.

ASSESSMENT OF A $10 FEE FOR TAKING AND APPROVING A BOND

While article 102.011(a)(5) of the Texas Code of Criminal Procedure authorizes a $10 fee "for taking and approving a bond and, if necessary, returning the bond to the courthouse," *see* TEX. CODE CRIM. PROC. ANN. art. 102.011(a)(5), the record does not show any bond was taken or approved. As such, this fee should be deleted from the judgment and corresponding bill of costs.

ASSESSMENT OF FEES FOR ISSUANCE AND SERVICE OF DOCUMENTS

Next, Briceno challenges an $8 fee for issuance of precept, $100 for the "Sheriff Service Fee," and $80 for the issuance of a subpoena. Section 51.318 of the Texas Government Code authorizes the clerk to collect an $8 fee for issuing a subpoena and an $8 fee for issuing any writs, such as a precept.[2] *See* TEX. GOV'T CODE ANN. § 51.318(b)(1)-(2); *In re Ingram*, 575 S.W.3d 367, 369 (Tex. Crim. App. 2019) (Yeary, J., concurring); *see also Ballard v. State*, No. 08-21-00180-CR, 2022 Tex. App. LEXIS 5201, at **4-5 (Tex. App.—El Paso July 27, 2022, no pet.) (mem. op., not designated for publication). Furthermore, section 51.318(c) of the Texas Government Code provides that: "The fee is the obligation of the party to the suit or action initiating the request." TEX. GOV'T CODE ANN. § 51.318(c). In this case, there is no record that Briceno applied for issuance of a subpoena or that a request for the issuance of precept was made. We therefore delete the $80 fee assessed

---

[2] A precept is "[a] writ or warrant issued by an authorized person demanding another's action, such as a judge's order to an officer to bring a party before the court." BLACK'S LAW DICTIONARY 1215 (8th ed. 1999).

for issuing a subpoena and the $8 fee assessed for issuance of precept from the judgment and corresponding bill of costs.

With regard to the $100 "Sheriff Service Fee," we note that there is no indication in the record as to what services were provided by the Leon County Sheriff to justify the $100 fee. *See* TEX. CODE CRIM. PROC. ANN. art. 102.011 (listing the various services provided by peace officers and the fees associated with those services); *see also Johnson v. State*, 423 S.W.3d 385, 395 (Tex. Crim. App. 2014) (noting that the record must reflect a basis for the costs assessed). Because the record does not show a basis for the $100 "Sheriff Service Fee," we delete this fee from the judgment and corresponding bill of costs.

COURT-APPOINTED ATTORNEY'S FEES

In his fourth issue, Briceno argues that the bill of costs improperly assesses $1,000 in court-appointed attorney's fees as court costs. We agree.

For the purpose of assessing attorney's fees, once an accused is found to be indigent, he is presumed to remain so throughout the proceedings absent proof of a material change in his circumstances. *See* TEX. CODE CRIM. PROC. ANN. art. 26.04(p); *see also Mayer v. State*, No. 10-10-00302-CR, 2011 Tex. App. LEXIS 1369, at *6 (Tex. App.—Waco Feb. 23, 2011, pet. ref'd) (mem. op., not designated for publication). Moreover, the record must reflect some factual basis to support the determination that Briceno was capable of paying all or some of his attorney's fees at the time of the judgment. *See* TEX.

CODE CRIM. PROC. ANN. art. 26.05(g); *Barrera v. State*, 291 S.W.3d 515, 518 (Tex. App.—Amarillo 2009, no pet.); *see also Willis v. State*, No. 10-09-00420-CR, 2010 Tex. App. LEXIS 8255, at *2 (Tex. App.—Waco Oct. 13, 2010, no pet.) (mem. op., not designated for publication) ("If the State fails to present evidence that the defendant is able to pay all or part of his court-appointed attorney's fees, then the trial court commits error by assessing any part of those fees as costs of court."). When there is insufficient evidence to support the assessment of court-appointed attorney's fees, the proper remedy is to reform the judgment by deleting the attorney's fees. *See Mayer*, 309 S.W.3d at 557.

Here, Briceno was determined to be indigent and appointed counsel. Furthermore, the State did not present any evidence of Briceno's current financial resources or his ability to repay his court-appointed attorney's fees. Because Briceno was presumed to be indigent absent proof of a material change in his circumstances, and because the State failed to present evidence of a material change in Briceno's circumstances, we hold that the evidence is insufficient to support the assessment of attorney's fees in this case. *See* TEX. CODE CRIM. PROC. ANN. arts. 26.04(p), 26.05(g); *Mayer*, 309 S.W.3d at 557; *see also Mayer*, 2011 Tex. App. LEXIS 1369, at *6; *Willis*, 2010 Tex. App. LEXIS 8255, at *2. Accordingly, we modify the judgment and corresponding bill of costs to delete $1,000 for the repayment of court-appointed attorney's fees. And based on the foregoing, we sustain Briceno's fourth issue, in part, and overrule his fourth issue, in part.

### Response to the Dissent

The dissent lists a number of "observations" that prevent him from joining the majority opinion. First, the dissent expresses confusion about when to use the abatement procedure that this Court has adopted to address issues involving court costs. In a published abatement order in *Welch v. State*, the majority of this Court explained that the trial court is required to order appellant to pay mandatory court costs, which are those that are predetermined and legislatively mandated. *See* No. 10-21-00284-CR, 2022 Tex. App. LEXIS 7647, at *3 (Tex. App.—Waco Oct. 12, 2022, order). However, in some instances, the assessment of court costs contains errors that prevent the proper presentation of the court-cost issue to this Court. *See id.* at **3-4; *see also* TEX. R. APP. P. 44.4(a) (noting that a court of appeal must not affirm or reverse a judgment or dismiss an appeal if "the trial court's erroneous action or failure or refusal to act prevents the proper presentation of a case to the court of appeals" and "the trial court can correct its action or failure to act"); *id.* at R. 44.4(b) ("If the circumstances described in (a) exist, the court of appeals must direct the trial court to correct the error. The court of appeals will then proceed as if the erroneous action or failure to act had not occurred."); *Fakeye v. State*, 227 S.W.3d 714, 717 (Tex. Crim. App. 2007) (noting that Texas Rule of Appellate Procedure 44.4 is implicated when " 'a trial court's error prevents the proper presentation of the case to the appellate court and that error can be remedied (without requiring an entire new trial or new punishment hearing) . . . ." (quoting *LaPointe v. State*, 225 S.W.3d 513, 521 (Tex. Crim. App. 2007))). In such instances, we have abated and remanded the appeal to

the trial court to reconsider the imposed court costs in light of the challenges made by appellant. *See Welch*, 2022 Tex. App. LEXIS 7647, at \*\*3-5. However, as mentioned in footnote 2 of the *Welch* abatement order, "[t]he abatement procedure ordered in this case should not be viewed as requiring abatement in cases involving court costs where errors can be accurately determined from the existing record." *Id.* at \*4 n.2.

Thus, the Court can, but is not obligated to, abate and remand the appeal to the trial court for reconsideration of court costs that are so confusing as to prevent the proper presentation of the issue in this Court. *See id.* at \*4-5 (collecting cases where an appellate court abated an appeal and instructed the trial court to make findings that comply with a particular statutory requirement). And because purported court-costs errors in this appeal are not so confusing as to prevent the proper presentation of the issue in this Court, we have not abated and remanded this appeal to the trial court for further consideration of the court-costs issue.

Although the dissent makes several other "observations," we believe the only other "observation" that warrants a response is the last one. Ostensibly relying on Texas Rule of Appellate Procedure 43.2, the dissent posits that this Court lacks authority to reform or modify a bill of costs in cases where the judgment is correct or unchallenged. Texas Rule of Appellate Procedure provides that a court of appeals may:

(a) affirm the trial court's judgment in whole or in part;

(b) modify the trial court's judgment and affirm it as modified;

(c) reverse the trial court's judgment in whole or in part and render the judgment that the trial court should have rendered;

(d) reverse the trial court's judgment and remand the case for further proceedings;

(e) vacate the trial court's judgment and dismiss the case; or

(f) dismiss the appeal.

TEX. R. APP. P. 43.2. The crux of the dissent's concern is that Rule 43.2 only allows this Court to affirm, modify, reverse, or vacate a "judgment," not a bill of costs or some other order. We disagree.

Under the Texas Rules of Appellate Procedure and governing case law, appellate courts have broad, remedial powers to correct errors in the record. *See Carter v. State*, 656 S.W.2d 468, 469 (Tex. Crim. App. 1983) ("Once jurisdiction of an appellate court is invoked, exercise of its reviewing functions is limited only by its own discretion or a valid restrictive statute."). Texas Rule of Appellate Procedure 43.6 provides that a court of appeals may "make any other appropriate order that the law and the nature of the case require." *Id.* at R. 43.6. Additionally, the Court of Criminal Appeals has held that an appellate court has the power to modify to make the record speak the truth if the matter has been called to the court's attention by any source and if the court has the necessary

information to do so.[3]  *See Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992).

In the context of court costs, many other intermediate appellate courts have modified a bill of costs to make the record speak the truth, much like a majority of this Court does today in this case. *See Pruitt v. State*, 646 S.W.3d 879, 889 (Tex. App.—Amarillo May 11, 2022, no pet.) (modifying the bill of costs to reduce or delete several fees); *Dority v. State*, 631 S.W.3d 779, 794 (Tex. App.—Eastland 2021, no pet.) ("When the trial court clerk erroneously includes fees as court costs, we should modify the bill of costs to remove the improperly assessed fees. . . .  We modify the bill of costs to delete any requirement that Appellant pay $10,820 for court-appointed attorney's fees, $2,500 for expert witness fees, and $5,074 for the court reporter's record fee."); *see also Ballard v. State*, No. 08-21-00180-CR, 2022 Tex. App. LEXIS 1373, at **6-7 (Tex. App.—El Paso July 27, 2022, no pet.) (mem. op., not designated for publication) (modifying the bill of costs to delete a number of fees, including the assessment of court-appointed attorney's fees); *Contreras v. State*, No. 05-20-00185-CR, 2021 Tex. App. LEXIS 10137, at *28 (Tex. App.—Dallas Dec. 23, 2021, no pet.) (mem. op., not designated for publication) (modifying the bill of costs to delete a number of fees); *Gordon v. State*, No. 06-19-00224-CR, 2020 Tex.

---

[3] We recognize that both *Bigley* and *French* are typically used to support modification of "judgments" in a traditional sense; however, these cases, as well as Texas Rule of Appellate Procedure 43.6, illustrate the broad, remedial powers afforded to appellate courts to correct errors to make the record speak the truth.  *See* TEX. R. APP. P. 43.6; *see also Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992).

App. LEXIS 3321, at **5-6 (Tex. App.—Texarkana Apr. 21, 2020, no pet.) (mem. op., not designated for publication) (modifying the bill of costs to delete a number of fees, including the assessment of court-appointed attorney's fees); *Prescott v. State*, No. 02-17-00158-CR, 2019 Tex. App. LEXIS 5421, at **13-15 (Tex. App.—Fort Worth June 27, 2019, no pet.) (mem. op., not designated for publication) (modifying the bill of costs to correct or delete several fees); *Hernandez-Prado v. State*, No. 03-15-00289-CR, 2016 Tex. App. LEXIS 5538, at *40 (Tex. App.—Austin May 26, 2016, pet. ref'd) (mem. op., not designated for publication) (modifying the bill of costs to delete a $2,000 fine); *Hunter v. State*, No. 12-15-00268-CR, 2016 Tex. App. LEXIS 4077, at **9-10 (Tex. App.—Tyler Apr. 20, 2016, no pet.) (mem. op., not designated for publication) ("[W]e modify the bill of costs to delete the $300 fee for Appellant's court appointed attorney.").

And finally, we note that a hyper-technical reading of Rule 43.2 will likely result in punishing and precluding defendants from pursuing their most effective remedy—direct appeal—for correcting court costs that were imposed outside the presence of the defendant. *See Johnson*, 423 S.W.3d at 390-91. Such a result conflicts with the intent expressed by the Court of Criminal Appeals in *London*, *Johnson*, *Armstrong*, and other court-cost cases. *See London v. State*, 490 S.W.3d 503, 507 (Tex. Crim. App. 2016) ("As we explained in *Johnson*, an appellant may generally challenge the imposition of even mandatory court costs for the first time on direct appeal when those costs are not imposed in open court and the judgment does not contain an itemization of the imposed court

costs."); *Johnson*, 423 S.W.3d at 395-96 ("However, we note that, although a bill of costs is not required to sustain statutorily authorized and assessed court costs, it is the most expedient, and therefore, preferable method."); *Armstrong v. State*, 340 S.W.3d 759, 766-67 (Tex. Crim. App. 2011) ("Court costs, as reflected in a certified bill of costs, need neither be orally pronounced nor incorporated by reference in the judgment to be effective." (citing *Weir v. State*, 278 S.W.3d 364, 367 (Tex. Crim. App. 2009))).

## Conclusion

Based on the foregoing, we modify the judgment and corresponding bill of costs to delete the $8 fee for issuing precept, the $100 "Sheriff Service Fee," and the $80 fee for issuing subpoenas. We further modify the bill of costs to delete the assessment of $1,000 for court-appointed attorney's fees. We affirm the judgment of the trial court as modified.

MATT JOHNSON
Justice

Before Chief Justice Gray,
    Justice Johnson,
    and Justice Smith
(Chief Justice Gray dissenting)
Affirmed as modified
Opinion delivered and filed August 9, 2023
Publish
[CR25]

